## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: GEMINI EQUIPMENT BUSINESS TRUST** | : | **CIVIL NO:1-05-CV-01665** |
| _____ | : | |
| **GEMINI EQUIPMENT BUSINESS TRUST,** | : | **(BK. NO. 05-03489)** |
| **Appellant** | : | |
| **v.** | : | |
| **FIRST UNION NATIONAL BANK f/k/a CORESTATES BANK, N.A.,** | : | |
| **Appellee** | : | |

## M E M O R A N D U M

Before the court is an appeal from an order of the Bankruptcy Court for the Middle District of Pennsylvania. The parties have briefed the issue and the matter is ripe for disposition. For the reasons that follow, the court will affirm the order of the bankruptcy court.

## I.        Background

The facts are well known to the parties, thus the court will dispense with their recitation in brief. In or about June 1993, First Union Bank, formerly CoreStates, N.A. (hereinafter "First Union") loaned the sum of $100,000.00 to Adams County Asphalt Company (hereinafter "ACA"). ACA is a wholly owned subsidiary of Appellant, Gemini Equipment Business Trust (hereinafter "Gemini"). Also in June 1993, First Union increased ACA's existing line of credit to $3,000,000.00. Both Gemini and Robert Mumma, the principal of Gemini and ACA,

guaranteed the loans for ACA.  First Union contends that ACA defaulted on the terms of the loans, and on June 8, 1998, First Union initiated proceedings against the guarantors of ACA's loans, Gemini and Robert Mumma, in the Court of Common Pleas for Dauphin County, Pennsylvania (hereinafter "the June 8, 1998 State Court Proceeding.")

In February 2003, ACA filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  The case is pending under bankruptcy case number 03-00722 in front of Chief Judge Thomas.[1]  To date, ACA has not filed a plan of reorganization.  Gemini asserts that ACA has "essentially been a dormant entity since filing of its Chapter 11 petition."  (Appellant's Principal Brief at 7.)  According to Gemini, "the dormant nature of ACA has been a planned event designed to minimize expenses until ACA could exercise its rights to operate a quarry," which Gemini contends contains valuable assets.  (*Id*.)

On May 25, 2005, Gemini filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  On or about June 10, 2005, First Union Bank filed its motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) (hereinafter the "Lift Stay Motion").  Specifically, First Union sought an allowance to continue litigation in the June 8, 1998 State Court Proceeding.

On July 5, 2005, one day prior to the scheduled hearing on the Lift Stay Motion, Gemini filed a motion for a change of venue ("hereinafter "the Change Venue Motion").  No hearing has been set or held, and no response date has been set by the bankruptcy court with respect to the Change Venue Motion.  On July 6, 2005,

---

[1]The instant case was not filed as a related case and as a result it was not assigned to Chief Judge Thomas but instead was assigned to Middle District Bankruptcy Judge France.

the bankruptcy court held a hearing on the Lift Stay Motion and, on July 7, 2005, entered an order granting the Lift Stay Motion.  Specifically, the bankruptcy court provided that First Union could go forward with the June 8, 1998 State Court Proceeding so that the claims of First Union could be liquidated; however, the bankruptcy court provided that First Union could only execute judgment against non-debtor third parties, specifically, Mr. Mumma.  The bankruptcy court provided that First Union could not execute any judgment against Gemini.  The court notes the ACA is not a party to the June 8, 1998 State Court Proceeding.  According to First Union, once its claims have been liquidated, the claims against Gemini "will be dealt with in a plan or otherwise as will all other liquidated claims of the estate." (Appellee's Brief at 2.)  Gemini timely filed this appeal on August 16, 2005.

## II.        **Legal Standard**

District courts have appellate jurisdiction over final judgments, orders, and decrees of the bankruptcy court.  28 U.S.C. § 158(a)(1).  When reviewing the bankruptcy court's factual determinations, the district court will not disturb such findings unless it finds that the bankruptcy court committed clear error.  *In re Fegley*, 118 F.3d 979, 982 (3d Cir. 1997); *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981).  The district court, however, reviews legal decisions *de novo*.  *Id.*; *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994).

## III.       **Discussion**

Gemini asserts three arguments in support of its appeal from the order of the bankruptcy court.  First, Gemini alleges that the presiding bankruptcy judge's

failure to recuse herself constituted an error of law and/or was in violation of judicial rules concerning recusal.  Second, Gemini asserts that the bankruptcy court should have enjoined proceedings against third-party, non-defendants.  Finally, Gemini argues that the bankruptcy court's granting of the Lift Stay Motion constituted an error of law and/or and abuse of discretion.  The court will examine each of Gemini's arguments and First Union's corresponding arguments below.

### A.    Recusal

Gemini argues that presiding Bankruptcy Judge France should have recused herself from the instant case, and that her failure to do so constitutes an error of law and is in violation of the judicial rules concerning recusal.  In response, First Union asserts that there has been no motion for recusal; thus, according to First Union, there has been no appealable decision.  First Union also purports that there are not sufficient facts in the record to support the recusal of Judge France.

With respect to First Union's argument that there is no appealable decision from the bankruptcy court, the court notes that there has been no motion for recusal at any point during the proceedings before Judge France.  Gemini does not dispute this; rather, Gemini alleges that Judge France should have recused herself *sua sponte*.  According to Gemini, the issue of recusal was raised by counsel during the July 5, 2005 Lift Stay Hearing.  Gemini also contends that it filed the July 4, 2005 Change Venue Motion because of the perceived impartiality of Judge France. The court notes that the Change Venue Motion was filed one day before the hearing on the Lift Stay Motion; the bankruptcy court has not ruled on the Change Venue Motion, and there is no pending motion for recusal before the bankruptcy court. Thus, there has been no final order and the district court cannot hear the appeal on

the matter of recusal at this time. *See* 28 U.S.C. 158(a) ("The district courts of the United States shall have jurisdiction to (1) hear appeals from final judgments, orders, and decrees. . . " of the bankruptcy courts).

Regardless, the court finds that there are not sufficient facts in the record to support Gemini's argument that Judge France should have recused herself. Title 28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The test for recusal under § 455(a) is where a reasonable person, with knowledge of all the facts, would conclude that the Judge's impartiality might reasonably be questioned." *In re Kensington Intern. Ltd.,* 368 F.3d 289, 296 (3d Cir. 2004). Furthermore, recusal for a lack of impartiality must have a reasonable basis. *U.S. v. Schreiber*, 599 F.2d 534, 536 (3d Cir. 1979). "Granting the truth of the allegations [of partiality], however, [the moving party] also 'must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment' before the judge need disqualify himself." *Parker Precision Products Co. v. Metropolitan Life Ins. Co.*,407 F.2d 1070, 1077 (3d Cir. 1969) (quoting *Berger v. United States*, 255 U.S. 22, 33-34 (1921)).

It is undisputed that Judge France was employed by the Office of the United States Trustee prior to her appointment to the bankruptcy court. Gemini asserts that Judge France, during her employment with the Trustee's Office, was exposed to Gemini's wholly owned subsidiaries ACA and the McDermott Company, as well as Gemini's principal Mr. Mumma. According to Gemini, Judge France was predisposed to an adverse association with Mr. Mumma and Gemini because of their interrelatedness. Gemini asserts that Judge France has consistently declined from

participating in Chapter 11 cases involving matters with which she dealt while employed in the Trustee's office.  There is no indication and Gemini provides no evidence that Judge France dealt with the instant matter while she was at the Trustee's office.  In addition, Gemini asserts that Judge France has refused to hear Chapter 13 cases involving principals of Chapter 11 cases that were pending when she was at the Trustee's Office.  The court notes that the present case is a Chapter 11 and not a Chapter 13 case; thus Gemini's argument on this point is without merit. Moreover, Gemini does not elaborate on the extent of this alleged exposure or how it allegedly affected Judge France's impartiality.  The court finds that Gemini has failed to provide "fair support" for its assertion that Judge France should have recused herself. *Parker Precision Products Co.*, 407 F.2d at 1077.  Accordingly, the court finds no reasonable basis for finding that Judge France should have recused herself.  *Schreiber*, 599 F.2d at 536.  The court will deny Gemini's appeal with respect to this issue.

### B.    Non-Debtor Third Parties

Gemini's second argument asserts that the bankruptcy court should have enjoined proceedings against the non-debtor third-party, Mr. Mumma.[2]  First Union

---

[2]The court notes that the heading of Gemini's second argument reads:

The Bankruptcy Case is so inextricably interwoven with the pending Bankruptcy Case of its wholly owned subsidiary, Adams County Asphalt Company, and already assigned to Chief U.S. Bankruptcy Judge John J. Thomas, that the court's failure to consider the venue motion and/or the court's grant of the Lift Stay motion necessarily implicated the administration of and substantive issues within the Adams County Asphalt Company Bankruptcy Case and needlessly increased the expense to be incurred in either or both said bankruptcy case and as likely would delay design, submittal, and/or confirmation of a reorganization plan in either or both cases, and rendered such failure to consider the venue motion and /or such grant of the motion for relief

(continued...)

contends that such relief is not proper because Gemini has not properly sought it and the record does not support granting such relief.

As properly cited by Gemini, *In re United Health Care Organization*, 210 B.R.228, 232 (S.D.N.Y. 1997) (citing *A.H. Robbins Co. v. Piccinin*, 788 F. 2d 994, 999 (4th Cir. 1986)), provides that the "body of case law establishes that courts may enjoin proceedings against a non-debtor third party defendant under [11 U.S.C.] § 105 where there is such identity between the debtor and that third party defendant that debtor may be said to be the real party defendant and that a judgment against the third party defendant will, in effect, be a judgment against the debtor." (Appellant's Brief in Supp. at 14.)  However, as *United Health Care Organization* indicates, the proper means for extending the automatic stay to non-debtor third parties is through 11 U.S.C. § 105.[3]  First Union contends that Gemini has never requested a § 105 injunction.  This contention is supported by the record .  As provided by the Third Circuit: "The relief under section 105(a), however, is neither automatic nor may it be imposed *sua sponte* by the court."  *In re Wedgewood Realty Group, Ltd*., 878 F.2d

---

[2](...continued)
from the automatic stay to be an error of law and/or an abuse of discretion.

(Appellant's Principal Brief at 13.)  Gemini's argument in support, however, only addresses the issue of extending the stay to the  non-debtor third party Mr. Mumma.  Thus, while the heading of Gemini's second argument seems to encapsulate the proverbial kitchen sink, the court will only address the arguments actually articulated in its brief.

[3]Title 11 U.S.C. § 105(a) provides in relevant part:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

693, 701 (3d Cir. 1989).  Because there has been no request for a § 105 injunction

the issue is not ripe for appeal.[4]

        The court notes that while Gemini asserts that "the legal effect of the

harm to [Gemini] if assets owed by Mr. Mumma or ACA are liquidated would be

irreparable" (Appellant's Principal Brief at 16), it offers no evidence in support of its

claim that if the assets of Mr. Mumma were seized, Gemini and ACA would not be

able to reorganize.  To the contrary, Gemini asserts that the reorganization is to be

funded by ACA's assets and income.  (*Id.* at 17.)  However, as noted, ACA is not a

party to the June 8, 1998 State Court Proceeding.  Therefore, any ACA assets that are

to be used by ACA to fund reorganization will not be disturbed by allowing the First

Union to proceed with the June 8, 1998 State Court Proceeding.  Thus, the court

finds that Gemini has failed to show that it would suffer any harm if the assets of Mr.

Mumma are liquidated.  Accordingly, the court finds that there was no error of law

and no abuse of discretion on the part of the bankruptcy court by not extending the

automatic stay to non-debtor third parties.  The court will deny Gemini's appeal on

this issue.

---

    [4]The court notes that while § 105 provides that the court may *sua sponte* take action to
enforce court orders, rules, or to prevent an abuse of process, § 105 does not provide that a court may
*sua sponte* extend the automatic stay to non-debtor third parties.

### C.    **The Lift Stay Motion**

Gemini asserts that the granting of the Lift Stay Motion constituted an

abuse of discretion.[5]  Specifically, Gemini asserts that 11 U.S.C. § 362(b)[6] does not

provide any exception to the automatic stay found in the instant case.  Gemini asserts

that any exception to the automatic stay would need to be found in § 362(d).

According to Gemini, there is no specific exception to the automatic stay regarding

the continuation of a state court proceeding in § 362(d).  Thus Gemini posits that the

lift of the automatic stay was improper.  In response, First Union argues that the

granting of the Lift Stay Motion was proper.

> Section 362(d) provides:
>
> On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided
> under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay –
>
>> (1) for cause, including the lack of adequate
>> protection of an interest in property of such
>> party in interest.

The court finds Gemini's interpretation of §362(d) to be incorrect.  As

stated, § 362(d) provides that the automatic stay can be lifted for cause.  The statute

does not define cause.  The bankruptcy court is to look to the totality of the

circumstances to determine if cause exists in each particular case.  *In re Wilson*, 116

F. 3d 87, 90 (3d Cir. 1997).  "The easiest ground for determining that 'cause' exists

in favor of an unsecured creditor is when the creditor seeks to recover from nonestate

---

[5]Again, the court notes that the granting of the Lift Stay Motion does not extend so far as to allow First Union to pursue the assets of ACA.  Moreover, the automatic stay itself did not extend so far as to cover Mr. Mumma, the principal of Gemini and ACA.

[6]11 U.S.C. § 362(b) provides specific instances where the automatic stay is not applicable.

property. . . ." *In re Borbidge*, 81 B.R. 332, 335 (E.D. Pa. 1988).  Courts have lifted

the automatic stay in instances where the "matter in dispute would be resolved more

economically, conveniently, and quickly in a nonbankruptcy forum." *Id.* (citing *In

re Westwood Broadcasting, Inc*., 35 B.R. 47 (Bankr. D. Hawaii 1983); *In re

Philadelphia Athletic Club, Inc*., 9 B.R. 280 (Bankr. E.D. Pa., 1981)).

Whether or not to lift an automatic stay under § 362(d) is in the

discretion of the bankruptcy judge and may only be reversed for an abuse of

discretion.  *In re Hohol*, 141 B.R. 293, 297 (M.D. Pa. 1992) (citing *In re Dixie

Broadcasting, Inc*., 871 F.2d 1023, 1026 (11th Cir.1989)).  The court finds that the

bankruptcy court has looked to the totality of circumstances and has not abused its

discretion.

The bankruptcy court determined that lifting the stay would not have a

significant impact on the Gemini estate.  (Transcript Lift Stay Motion Hearing at 39.)

With respect to Gemini, the bankruptcy court provided that any judgment in the June

8, 1998 State Court Proceeding could only be entered.  (*Id*.)  First Union is not

allowed to execute any judgment of the June 8, 1998 State Court Proceeding against

Gemini without leave from the bankruptcy court.  The bankruptcy court also stated

that any judgment "can be treated in the plan that [First Union] indicate[d] [will] be

filed.  If these are substantively consolidated, then it can be treated in a substantively

consolidated matter."  (*Id*.)  As stated, the litigation involving Gemini and the

litigation involving ACA have not been consolidated at this time.  The court finds

that the bankruptcy court did not abuse its discretion when it determined that neither

Gemini or the assets of the estate will be adversely affected by the granting of the

Lift Stay Motion.

The bankruptcy court also determined that the claim would need to be liquidated before it can be administered and that the litigation would occur in the Court of Common pleas or in the bankruptcy court.  (Transcript Lift Stay Motion Hearing at 25.)  The court notes that First Union initiated proceedings against Gemini over seven years ago in state court; thus, the state court has much more familiarity with the issue at hand.  The court is cognizant that the *Rooker-Feldman* Doctrine precludes a bankruptcy court from reviewing a state court's judgment.  *In re Knapper*, 407 F.3d 573 (3d Cir. 2005).  However, Gemini cannot point to any reasons why the Court of Common Pleas cannot render a competent decision. Moreover, considerations of judicial economy and resources dictate that the court should avoid duplicitous litigation.  The Third Circuit, in quoting the legislative history of § 362(d)(1), stated:  "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."  *In re Wilson*, 116 F.3d 87, 91 (3d Cir. 1997) quoting S.Rep. No. 95-989 at 50 (1978), reprinted in 1978 U.S.C.C.A.N 5787, 5836.

In its reply brief, Gemini asserts that "judicial economy is best served where interrelated Defendants are allowed to deal with the claim of a particular Plaintiff through an existing Bankruptcy case of one of the Defendants."  (Appellant Reply Brief at 2.)  In support, Gemini relies on the Memorandum and Order issued by this court in *Docu-Test Systems, Inc., et al. v. National Medical Services of Maryland, Inc.*, No. 95-787 slip op. at 1 (M.D. Pa. March 4, 1997).  However, as noted by this court, sufficiently unusual circumstances must exist.  *Id*. (citing

*McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 509 (3d Cir. 1997)).  "[C]ourts have found 'unusual circumstances' where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."  *McCartney*, 106 F.3d at 509 (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).  Gemini has not shown that such unusual circumstances exist in this case.  Moreover, the granting of the Lift Stay Motion provides that a judgment obtained in state court may only be executed against Mr. Mumma.  The bankruptcy court has determined that this would not have an adverse effect on Gemini.  Thus, there is no "identity" issue as detailed in *McCartney*.  *Id.*

In light of the fact that neither the debtor nor the assets of the estate will be harmed by the granting of the Lift Stay Motion, and that judicial economy is best served by having the parties proceed with the June 8, 1998 State Court Proceeding, the court finds no abuse of discretion by the bankruptcy court in its decision to grant the Lift Stay Motion.  Accordingly, the court will deny Gemini's appeal with respect to this issue.

## IV.        Conclusion

In accordance with the foregoing discussion, the court will deny Gemini's appeal from the bankruptcy court's order.  An appropriate order will issue.

s/Sylvia H. Rambo<br>SYLVIA H. RAMBO<br>United States District Judge

Dated:  November 14, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: GEMINI EQUIPMENT<br>BUSINESS TRUST** | : | **CIVIL NO:1-05-CV-01665** |
| _____ | : | |
| | : | |
| **GEMINI EQUIPMENT BUSINESS<br>TRUST,** | : | |
| | : | **(BK. NO. 05-03489)** |
| **Appellant** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FIRST UNION NATIONAL BANK<br>f/k/a CORESTATES BANK, N.A.,** | : | |
| | : | |
| **Appellee** | : | |

# O R D E R

In accordance with the foregoing memorandum of law, **IT IS HEREBY**

**ORDERED THAT:**

1) The bankruptcy court's order dated July 7, 2005 is

**AFFIRMED**.

2) The Clerk of Court shall close the file.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  November 14, 2005.